**Mary A. MURPHY and Kenneth P. Murphy**

v.

**ABBOTT LABORATORIES.**

**Civil Action No. 95–7416.**

United States District Court, E.D. Pennsylvania.

April 9, 1996.

John F.X. Fenerty, Baratta & Fenerty, Ltd., Patricia A. Heenan, Huntingdon Valley, PA, for Mary A. Murphy, Kenneth P. Murphy.

Albert L. Piccerilli, Manta & Welge, Philadelphia, PA, for Abbott Laboratories.

## OPINION

GAWTHROP, District Judge.

Mary and Kenneth Murphy, Pennsylvania citizens, brought this diversity products-liability action against Abbott Laboratories, an Illinois corporation seeking to recover for injuries allegedly caused by a needle-stick that Mrs. Murphy suffered while working as a registered nurse at a Philadelphia hospital.[1] Plaintiffs allege that on November 13, 1993, Mrs. Murphy cared for a patient, who was being administered antibiotics intravenously. The patient was known to be both HIV- and Hepatitis B-positive. While handling the intravenous device Mrs. Murphy stuck her hand with a needle, which defendant had designed, manufactured, and sold to the hospital as a "needleless system." The device was designed to prevent this very kind of incident, having been capped with defendant's safety product by a fellow hospital employee.

Plaintiffs do not allege that Mrs. Murphy has tested positive for HIV, Hepatitis B, or any other communicable disease. Nor do they allege that she has even been tested for any disease. What they allege is that this incident caused Mrs. Murphy to suffer a direct physical injury and an attendant fear of contracting a deadly disease. Defendant moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that Pennsylvania does not recognize a cause of action for

---

**1.** Plaintiffs bring claims for negligence and strict liability at counts I and II of the complaint. Plaintiff Kenneth Murphy also brings a loss-of-consortium claim at count III of the complaint.

fear of developing AIDS.[2] Upon the following reasoning, I shall deny defendant's motion.

■ In deciding a Rule 12(b)(6) motion to dismiss for failure to state a cause of action, the factual allegations in the complaint are to be accepted as true. The complaint should be dismissed only if it is clear that no relief could be granted under any set of facts that could be consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984). Accordingly, for the purposes of this motion, all of plaintiffs' allegations and all reasonable inferences that can be drawn from them will be regarded as true. Because this is a diversity case, Pennsylvania substantive law applies. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As seems to be so often the case, however, the Supreme Court of Pennsylvania has not told us its view of the law of the Commonwealth in this area. I am thus required to predict what the Pennsylvania Supreme Court would decide if faced with this case. *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3rd Cir.1985).

■ The issue before me is whether an individual who is injured by the penetration of an intravenous needle ("IV") into her body, which needle was used to administer an IV antibiotic to a patient who had AIDS and was known to have AIDS, has a cause of action not only for the direct physical injury she suffered, but also for the emotional distress arising from that injury. Plaintiffs contend that her fear of contracting AIDS is a consequence of her physical injury—namely, the needle-stick itself. Under traditional tort principles all consequential damages flowing from the physical injury are recoverable. Plaintiffs argue that to be emotionally distressed at the prospect of contracting AIDS after having been stuck by a needle, which had shortly before been immersed in the bodily fluids of one who had already tested positive for AIDS, is a natural consequence of that physical injury. I agree.

Where a defendant's negligence inflicts a direct physical injury, courts have allowed recovery for the purely mental distress accompanying it. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 54, at 362–63 (5th ed. 1984). When a cause of action is based on immediate physical harm, these so-called "parasitic" damages are awarded. The policy rationale for allowing such parasitic damages, as distinct from mental distress damages standing alone, is that the direct physical injury provides sufficient assurance that the emotional distress is not feigned.

Following these general principles of tort law, it had long been the rule in Pennsylvania that there could be no recovery for injuries resulting from mental distress, unless they were accompanied by physical injury or physical impact. *Bosley v. Andrews,* 393 Pa. 161, 142 A.2d 263 (1958). The Pennsylvania Supreme Court abandoned this rather rigorous rule in *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970), where the court supplanted the "impact rule," as it was called, with the "zone of danger rule." Under the "zone of danger rule" a plaintiff could recover for mental distress and physical injuries attendant to the negligent incident, even absent a direct physical injury or impact, as long as the plaintiff was in the "zone of danger" created by the defendant's negligence. The court went further in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979), and allowed recovery where a close relative suffered mental distress and physical injuries attendant to the negligent incident, even though the plaintiff was a bystander not within the traditional zone of danger.

In *Botek v. Mine Safety Appliance Corp.,* 531 Pa. 160, 611 A.2d 1174 (1992), the Pennsylvania Supreme Court reaffirmed the long line of authority supporting the "impact rule." In that case the plaintiff, a fireman, suffered minor physical injuries when he inhaled carbon monoxide from an airpack that had been negligently filled. The plaintiff also suffered consequential psychological and emotional injuries. After the jury awarded the plaintiff a substantial verdict, the Superi-

---

**2.** While plaintiffs allege that Mrs. Murphy generally fears contracting a deadly disease, the parties' pleadings focus on her specific fear of contracting AIDS. For the purposes of this opinion, I shall only refer to her fear of AIDS.

or Court granted the defendant a remittitur, reducing his damages to out-of-pocket medical expenses. The Pennsylvania Supreme Court reversed, holding that:

> It is simple black letter law that a tortfeasor must take its victim as it finds him. Plaintiff–Appellant suffered objective, measurable, observable physical injuries here (although they were relatively mild). All of the consequent psychological and emotional pain and suffering is compensable in that situation, and our law has long so held under the so-called 'impact rule.'

*Id.* at 165, 611 A.2d at 1176 (citation omitted).

■ As recently as last week, in *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996), the Pennsylvania Supreme Court discussed the distinction between emotional distress damages attendant to physical injury and emotional distress damages standing alone. In this consolidated appeal the court held that the plaintiff-appellants could not recover for emotional distress caused by occupational exposure to asbestos. The plaintiffs sought to recover for the risk and fear of contracting cancer, where the diagnosis of asymptomatic pleural thickening of the lungs, brought on by occupational exposure to asbestos, caused them to suffer mental anguish but no discernible physical injury. The court held that, because plaintiffs could not establish that asymptomatic pleural thickening was a physical injury, they could not recover for their resultant emotional distress:

> It is the general rule of this Commonwealth that there can be no recovery of damages for injuries resulting from fright or nervous shock or mental or emotional disturbances or distress *unless they are accompanied by physical injury or impact.*

*Id.,* at ——, 674 A.2d at 238 (emphasis added). Like the plaintiff in *Botek,* however, Mrs. Murphy alleges an objective, measurable, and observable physical injury, albeit a needle-stick. She is thus able to recover for the emotional distress that consequentially flowed from this alleged physical injury.

Defendant dismisses this long line of authority and instead argues that Pennsylvania does not recognize a cause of action for fear of contracting AIDS, relying primarily on *Lubowitz v. Albert Einstein Med. Ctr.*, 424 Pa.Super. 468, 623 A.2d 3 (1993), and its progeny. All those authorities I find to be distinguishable. In *Lubowitz,* for example, the plaintiffs, a married couple, had participated in an in vitro fertilization program that required placing an egg and sperm from the couple into donated placental blood, after which the embryo was implanted in Mrs. Lubowitz and she became pregnant. Although she later miscarried, it turned out that the donated blood tested positive for the AIDS antibody, the news of which caused Mrs. Lubowitz to experience significant physical and emotional distress. She twice tested negative for AIDS, the second time approximately six months after the in vitro fertilization, and the placental donor's blood also tested negative for AIDS. The defendants contended that the single positive test result was a false positive. Mrs. Lubowitz suffered no physical injury arising from the procedure itself; all of Mrs. Lubowitz's physical ailments arose from her fear of contracting AIDS.

■ Analogizing to fear-of-contracting-cancer cases, the Superior Court held that Mrs. Lubowitz "cannot recover, in her asymptomatic state, monetary damages for a risk or fear of developing AIDS in the future." *Id.* at 471, 623 A.2d at 5. Because Mrs. Lubowitz did not suffer physical injury arising from the defendant's allegedly negligent conduct, the facts of *Lubowitz* are distinguishable. The steel needle's actual forcible entry past the skin, into the flesh, is sufficient to distinguish the facts of that intermediate appellate court case from this one.[3] Mrs. Lubowitz sought to recover for negligent performance of an undertaking to render services and negligent infliction of emotional distress. She alleged no direct physical injury caused by the defendants' negligence. All of her physical injuries were derivative of her fear of AIDS. By contrast,

---

3. I recognize that *Lubowitz,* not coming from Pennsylvania's highest court, is not binding authority. *Gruber v. Owens–Illinois, Inc.*, 899 F.2d 1366, 1369 (3rd Cir.1990). It thus need not be distinguished; but distinguishable nevertheless it is.

Mrs. Murphy seeks to recover for a negligent act that caused direct physical injury.

Defendant also cites *Burk v. Sage Products, Inc.*, 747 F.Supp. 285 (E.D.Pa.1990), and *Rothschild v. Tower Air, Inc.*, 1995 WL 71053 (E.D.Pa. Feb. 22, 1995), for the proposition that Mrs. Murphy cannot recover for her fear of contracting AIDS. In *Burk*, a paramedic sued the manufacturer of a needle disposal and containment unit, having been stuck by a needle that protruded from the container. He alleged that several AIDS patients were seen on the same hospital floor on the day he was stuck by the needle, and he sought recovery for various ailments that allegedly stemmed from his fear of contracting AIDS. This he did even though he tested negative for AIDS five times after the incident. The court, analogizing to fear-of-contracting-cancer cases, granted defendant's motion for summary judgment. It observed that since the plaintiff could not prove that the pricking needle had been used on an AIDS patient, he could not prove that he had actually been exposed to the AIDS virus. That is, obviously, a distinction of significance.

In *Rothschild*, the court precluded evidence of plaintiff's fear of AIDS. Plaintiff, an airplane passenger, had reached into a magazine pouch and was stuck with a hypodermic needle. She sued for injuries arising from the needle-stick, to include the fear of contracting AIDS. But Mrs. Rothschild, too, could not prove actual exposure to AIDS— that the needle had in fact ever been exposed to that insidious virus. She simply had been pierced by a hypodermic needle left in a seat pocket. Because neither of these cases embraced evidence that the offending needle had previously come into contact with the AIDS virus, neither case provides guidance for the resolution of this one.

Defendant also cites *Griffin v. American Red Cross*, 1994 WL 675105 (E.D.Pa. Nov. 28, 1994), where the court granted summary judgment against plaintiff's claim for negligent infliction of emotional distress, to include fear of contracting AIDS. The Red Cross incorrectly told plaintiff that the blood she had donated in anticipation of surgery had tested positive for HIV, giving her the misimpression for 24 hours, until the correct, negative test came back, that she was HIV-positive. Again, relying on *Lubowitz* and *Burk*, the court rejected plaintiff's claim, since, ultimately, there was no evidence that plaintiff had been exposed to AIDS.

Similarly, in *Millikan v. Holy Spirit Hospital*, No. 95–3482 (Ct. Common Pleas Cumberland County Feb. 9, 1996), the defendant had misinformed plaintiff that blood drawn in a pre-admission procedure for surgery on her nose had tested positive for AIDS, which a second test confirmed. Plaintiff later learned that these two tests had actually been performed on the blood of a person other than the plaintiff, so that she had, fortunately, yet temporarily traumatically, been subjected to an empty scare. Relying on *Lubowitz* and *Griffin*, the court dismissed plaintiff's emotional distress claim based on fear of AIDS.

Because neither of those plaintiffs suffered exposure to AIDS, but were instead victims of misdiagnosis, the *Griffin* and *Millikan* opinions are also factually distinguishable. Those plaintiffs' claims were for emotional distress standing alone. In that related, yet legally distinct, context, Pennsylvania clearly does not recognize a cause of action for fear of contracting AIDS. By contrast, Mrs. Murphy alleges a cause of action for fear of AIDS resulting from direct physical by a needle exposed to AIDS.

The long and the short of it is that because plaintiffs' emotional distress (fear of contracting AIDS), results from physical injury by a penetrating object which was previously exposed to AIDS, and because the authorities relied upon by the defense to call for a different result are all distinguishable because they involve cases where the plaintiff had suffered no physical injury (*Lubowitz*), or where the plaintiff had not been exposed to AIDS, either because (1) the needles had not been exposed to AIDS (*Burk* and *Rothschild*), or (2) the patient had simply been misdiagnosed, without personal physical exposure (*Griffin* and *Millikan*), recovery in this case for the distress and fear of contracting AIDS is permissible.

An Order follows.

*ORDER*

AND NOW, this 9th day of April, 1996, it is hereby ordered that defendant's Motion to Dismiss is DENIED.